E-FILED
Tuesday, 05 April, 2011 10:17:24 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | | |
|---|---|---|
| Janet Rendon, Independent Administrator of the Estate of Carol Czubernat, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 10-CV-1410 |
| v. | ) ) | |
| Wexford Health Sources, Inc., et al., | ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff pursues federal and state claims arising from the suicide of Carol Czubernat in Dwight Correctional Center on February 28, 2009. Before the Court is Plaintiff's motion to file an additional report pursuant to 735 ILCS 5/2-622, regarding Plaintiff's malpractice claims. Also before the Court are separate motions to dismiss from Defendants Ray and Argosy Education Group, Inc. ("Argosy Group"), and from Defendant Wexford Health Sources, Inc. ("Wexford"). For the reasons set forth below, the Court recommends that Plaintiff's motion to file an additional report be granted, and that the motions to dismiss be denied.

## Legal Standard

To state a claim under federal notice pleading standards, the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and must give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). The "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955. Plaintiffs must do more than "merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing

some specific facts to ground those legal claims, . . . ." Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009). The application of the notice pleading standard is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Cooney v. Rossiter, 583 F.3d 967, 971 (7th Cir. 2009), *quoting* Iqbal, 129 S.Ct. at 1950.

## Allegations and Procedural History

The Court sets forth these allegations as true for purposes of this Recommendation only. The Court sets forth only those allegations relevant to the defendants who have filed motions to dismiss.

On August 1, 2008, Carol Czubernat was arrested and charged with aggravated driving under the influence of alcohol. (Complaint ¶¶ 18-19).[1] Before Czubernat was placed in jail, she was taken to the hospital for an evaluation of her current psychiatric medications and for possible suicide ideation. (Complaint ¶ 20). During her stay at the jail, she was prescribed Cymbalta and Trazadone. (Complaint ¶ 25).

In November 2008, Czubernat pled guilty and was transferred to Dwight Correctional Center to serve her sentence. (Complaint ¶ 26). Her

---

[1]Citations to the Complaint refer to the Second Amended Complaint (d/e 98).

Trazadone prescription was discontinued before her transfer. A transfer form from the jail to the prison set forth the psychotropic drugs Czubernat had taken over the past year, and her suicidal expressions in August 2008. (Complaint ¶ 29).

On November 21, 2008, Defendant Ray, a licensed clinical psychologist employed by Defendant Argosy Education Group, Inc., performed a mental health evaluation of Czubernat at Dwight Correctional Center. Czubernat told Ray about her 18-year history of mental health treatment; her diagnosis of depression, anxiety, and possible bipolar disorder; her past and present medications; and, her suicide attempt at age 14. She also told Ray that she was currently taking Cymbalta and Trazadone. (Complaint ¶¶ 30-32). Defendant Ray allegedly did not ask Czubernat about the suicidal expressions in August 2008. Ray's treatment plan did not include a referral for possible prescriptions by a psychiatrist or mental health treatment. (Complaint ¶ 35). Instead, the treatment plan recommended routine placement and referral to "drug TX school and work assignment." (Complaint ¶ 35). The plan also stated that Czubernat was told that mental health services were available to her at any time. (Complaint ¶ 35).

From November 21, 2008, to February 19, 2009, Ray performed no follow-up on Czubernat, nor did Czubernat receive any mental health treatment or medications. (Complaint ¶ 36).

In January, 2009, Czubernat sought confirmation that she had no medical hold that would prevent her from being transferred to a different prison. She was informed on February 4, 2009, that her medical hold had been lifted. (Complaint ¶ 39). The Complaint does not state whether Czubernat actually put in for a transfer.

On February 12, 2009, Czubernat filled out a medical request form asking to see a psychiatrist immediately and to be put back on Trazadone. She wrote, "Please help me now! I cannot wait a month for an appointment! I need to see him immediately to be put back on my anti-depressant, Trazadone. I am in a crisis. I can't handle it back here." (Complaint ¶ 40). An unknown psychologist came to Czubernat's cell the next day and told Czubernat that a psychiatrist would come by the following day. (Complaint ¶ 42). However, Czubernat's request was not received by the health care unit until February 18, 2009, and a psychiatrist did not come by. (Complaint ¶ 41).

Czubernat filled out another medical request form on February 17, 2009, again asking urgently for her medication and to see a psychiatrist, stating that she was suffering from severe depression and panic attacks. (Complaint ¶ 43)("URGENT!!! EMERGENCY!!! I need to see someone! I am losing my mind and need my medication. . . .")(capitals in Complaint). This form was received by the health care unit on the next day, February 18th. That day, Defendant Ray came to Czubernat's cell and told Czubernat that Czubernat would not be moved up on the waiting list to see a psychiatrist. (Complaint ¶ 46).

The next day, February 19th, Defendant Ray told Plaintiff to try relaxation techniques, to which Czubernat replied, "You suck." (Complaint ¶ 47). Ray wrote in her records that Czubernat denied suicidal or homicidal ideation. (Complaint ¶ 47). That same day an employee of Defendant Wexford Health Sources, "including but not limited to" Defendant Funk, prescribed Cymbalta to Plaintiff without examining her.

On February 20th, Czubernat send a medical request form to Defendant Dr. Yuan, asking again for her medications and describing "major panic attacks" and "depression soaring out of control." (Complaint ¶ 49)("I have a long history of severe depression and anxiety and panic

attacks." "I am not handling it in here at all."). The letter was returned to her with a note that her medications were "bridged" and that she would be seeing a doctor soon. (Complaint ¶ 50).

On February 25, 2009, Czubernat wrote another letter to Defendant Dr. Yuan, stating that she had still not received her medications and that she was "going to lose her mind. . . I can't take it much longer in here." (Complaint ¶ 51). She sent two more letters seeking help on February 26th: in one she stated that she had still not received medication; in the other she stated that she had received the Cymbalta, but that it was not enough for her panic attacks. (Complaint ¶ 54)("the Seg lock down is driving me over the edge...I'm losing my mind. . . I won't make it! I am experiencing panic attacks EVERY DAY-SEVERAL TIMES A DAY PLEASE HELP ME.")(capitals in Complaint). On February 27th she sent another request for help. (Complaint ¶ 55) ("URGENT" "PLEASE COME SEE ME!" "This is an unbearable situation . . . I cannot take the turmoil. . . .") (capitals in Complaint).

On February 28, 2009, at about 4:47 a.m., Czubernat was found in her cell, hanging from her bunk. (Complaint ¶ 72). The February 25-27 letters that Czubernat had sent asking for help had not been processed.

They were found in the mental health mailbox after Czubernat committed suicide. (Complaint ¶ 56).

In March 2010, the Administrator of Czubernat's estate filed this case in the Northern District of Illinois. Plaintiff attached a report to her complaint from a psychiatrist, to fulfill the requirements of 735 ILCS 5/2-622 regarding malpractice actions. In April, 2010, Defendants Argosy Group and Ray moved to dismiss the malpractice counts, arguing that the report attached to the complaint did not meet the requirements of 735 ILCS 5/2-622, because it was not authored by someone in the same profession and holding the same license as Defendant Ray, a clinical psychologist. (d/e 39). Plaintiff filed a response in May, 2010, disagreeing with that argument and also asking to file an additional report by a licensed psychologist. (d/e 51). Later that month some of the defendants filed a motion to transfer venue, which was granted in December, 2010. (d/e's 63, 94-95).

After the case was transferred to the Central District of Illinois, this Court granted Plaintiff's motion for leave to file a Second Amended Complaint and denied the pending motions to dismiss without prejudice to renewal. (12/28/10 text order). The Second Amended Complaint,

however, attached only the report from the psychiatrist, not the additional report from the psychologist. (d/e 98).

Defendants Argosy Group and Ray followed with the instant motion to dismiss, again arguing that the report did not satisfy 735 ILCS 5/2-622, and also arguing that Plaintiff failed to state an Eighth Amendment claim against Ray. Plaintiff followed with a motion to add the additional report by the psychologist, asserting that it had inadvertently been omitted from the Second Amended Complaint. Wexford filed its own motion to dismiss the <u>Monell</u> claim. These three motions are now before the Court. A fourth motion, one to dismiss by Defendant Yuan, is not yet ripe for a ruling and will not be addressed in this report.

## Analysis

### I. Plaintiff's Motion to File an Additional 2-622 Report

Argosy Group and Ray argue that Plaintiff's additional report is untimely and will prejudice them, but they fail to mention that Plaintiff already moved to add the report back in May, 2010, in her response to the prior motion to dismiss. That request was not ruled on before the case was transferred, and the motion to dismiss was mooted by the filing of the Second Amended Complaint. Thus, Argosy Group and Ray were notice of

the additional report back in May, 2010, when Plaintiff first tried to add it. It works no unfair surprise or prejudice to them. Additionally, the record supports Plaintiff's assertion that her failure to attach the second report to the Second Amended Complaint was inadvertent. The additional report was no secret, and Plaintiff quickly attempted to remedy its absence after Ray and Argosy Group filed their motion to dismiss.

Argosy Group and Ray point to 735 ILCS 5/2-622(a)(2), which requires the affidavit and written report to be filed within 90 days of the filing of a complaint, if they were not attached to the complaint when filed because of statute of limitations concerns. The Court does not see how the 90-day deadline applies here, since there *was* a report and affidavit filed with the Complaint. Plaintiff's additional report is an attempt to cure the alleged defects in the first report, which was timely filed. Such amendments may be granted by the trial court in its discretion. *See* Apa v. Rotman, 288 Ill.App.3d 585, 590 (5th Dist. 1997)(finding that trial court abused discretion by not allowing defendant a chance to file amended affidavit and report to cure deficiencies). Argosy Group and Ray make no argument that Plaintiff should be prevented from curing any perceived defects in her original report.

Even if the 90-day deadline is relevant, Plaintiff did make a request to file her additional report within 90 days of filing her Complaint; she did so in May 2010. That the additional report was not attached to the Second Amended Complaint does not change the date that the additional report was put into the record.

Argosy Group and Ray also argue that leave should not be allowed because the additional report is referred to as an "affidavit" in Plaintiff's motion. It is clear, though, that the additional report is intended to be and is a report under 735 ILCS 5/2-622. (d/e 112-2, p. 1). That Plaintiff's motion refers to it as an affidavit is of no moment.

Argosy Group and Ray next contend that the additional report must state that a meritorious case exists based on a "reasonable degree of *psychological* certainty," rather than "a reasonable degree of *medical* certainty" as the current report states. They cite no support for that kind of nitpicking. "The purpose of section 2-622 is to eliminate frivolous medical malpractice suits at an early stage[,]" not to "deprive a plaintiff of his substantive rights." Cutler v. Northwest Suburban Community Hosp., Inc., 405 Ill.App.3d 1052, 1064 (1st Dist. 2010). It is obvious from the additional

report that it is based on the psychologist's experience as a licensed psychologist for over thirty years. (d/e 10-1410).

Argosy Group and Ray point out that the report does not identify the author and is not notarized. They cite no legal support for such a requirement, nor is that requirement in 735 ILCS 5/2-622. Plaintiff is correct that the amendments to the statute which would have required identification of the report's author were declared unconstitutional when the Acts which contained those changes were struck down in their entirety. Lebron v. Gottlieb Memorial Hosp., 237 Ill.2d 217, 250 (2010); Best v. Taylor Machine Works, 279 Ill.2d 367, 467 (1997).

Accordingly, for the reasons above, the Court recommends that Plaintiff be given leave to file her additional report as an attachment to the Second Amended Complaint.

## II. Motion to Dismiss by Argosy Group and Ray

Defendants Argosy Group and Ray argue that the negligence claims against them must be dismissed because the first 2-622 report was authored by a psychiatrist, who is licensed in a separate class than Ray, a clinical psychologist. This argument is moot, given the Court's recommendation that Plaintiff be allowed to file an additional report by a

licensed psychologist. The Court therefore addresses only the argument that Plaintiff fails to state an Eighth Amendment claim against Ray individually.

Ray contends that no plausible inference arises that she was deliberately indifferent to Plaintiff's serious medical needs, as is required to state an Eighth Amendment claim for cruel and unusual punishment. Ray instead argues that the allegations show only a disagreement with Ray's treatment decisions, not deliberate indifference.[2] Ray correctly sets forth the legal standard for deliberate indifference, but her argument belongs at the summary judgment stage in this Court's opinion.

"A negligent or inadvertent failure to provide adequate medical care is insufficient to state a section 1983 claim . . . 'Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. . . .'" Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002) (*quoting* Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" Johnson v. Snyder, 444 F.3d 579, 585 (7th Cir. 2006) (quoted cite omitted). It is "'essentially a criminal recklessness standard,

---

[2]Ray does not dispute that a plausible inference arises that Plaintiff's psychiatric needs were serious.

that is, ignoring a known risk.'" Id. (quoted cite omitted). The defendant must have personally known of a substantial risk of serious harm to the plaintiff's health and consciously ignored it. Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010)(a defendant must have known, subjectively, that the plaintiff had a substantial risk of committing suicide, and must have "'intentionally disregarded the risk.'")(quoted cite omitted). Malpractice or a disagreement with a doctor's treatment decisions is not enough to make out an Eighth Amendment claim. Steele v. Choi, 82 F.3d 175, 178-79 (7th Cir. 1996); Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996).

Plaintiff's theory of liability as to Ray is that Ray "failed to act despite her knowledge that if Carol Czubernat's mental health issues were not treated, there was a substantial risk that she would harm herself." (d/e 51, p. 12). In the Court's opinion, the factual allegations plausibly allow this inference, which in turn allows a reasonable inference that Ray was deliberately indifferent. A plausible inference arises that Ray subjectively knew of a substantial risk that Plaintiff would try to commit suicide, and that Ray had the authority to do something about it. Whether competing inferences win the day is a decision that must await a fully developed record on summary judgment, or trial.

**III. Motion to Dismiss by Defendant Wexford Health Sources, Inc.**

Wexford was allegedly contracted to provide medical, mental health and dental care to inmates at Dwight Correctional Center, and employed Defendant Drs. Yuan and Funk. (Complaint ¶¶ 7-9).

Private corporations acting under color of state law, like Wexford, are treated as municipal entities for purposes of 42 U.S.C. § 1983. Jackson v. Ill. Medi-Car, Inc., 300 F.3d 760, 766 n. 6 (7th Cir. 2002). Wexford cannot be held liable for the constitutional violations of its employees under a theory of respondeat superior. Iskander v. Vill. of Forest Park, 690 F.2d 126, 128 (7th Cir. 1982). However, it can be held liable for its own unconstitutional policies or for failing to implement a policy to prevent constitutional deprivations. See Monell v. Dep't of Soc. Servs, 436 U.S. 658, 694 (1978); Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2010)("failure to make a policy is also actionable"); Armstrong v. Squadrito, 152 F.3d 564, 578 (7th Cir. 1998)("failure to make policy in a situation that demands policy" can be the basis for a *Monell* claim).

Plaintiff alleges that Wexford "had a custom and practice of failing to process medical requests, failure to train employees to treat inmates, and failure to properly staff jails and prisons throughout the United States and

at the Dwight Correctional facility." (Complaint ¶ 110). Specifically as to Dwight Correctional Center, Plaintiff alleges that Wexford's practices and customs included a:

a. Failure to process medical requests forms which were completed by the inmates at Dwight Correctional Center;

b. Failure to train employees at Dwight Correctional Center on how to process and treated [sic] inmates with mental health issues within an appropriate time;

c. Fail[ure] to appropriately staff the mental health unit at the Dwight Correctional Center, which would allow the inmates to receive appropriate medical and mental health care.

d. Fail[ure] to have the appropriate system in place to respond to emergency medical health care;

e. Failure to train, supervise and discipline mental health unit employees who neglected the needs of inmates at Dwight Correctional Center.

(Complaint ¶ 111). Wexford allegedly maintained and encouraged these practices. (Complaint ¶ 114).

The Court believes that these allegations, along with the other factual allegations discussed above, are sufficient to state a section 1983 *Monell* claim against Wexford. A plausible inference arises that Wexford, with deliberate indifference, had no policy in place to ensure that requests for

serious and urgent psychiatric needs were timely processed. A plausible inference also arguably arises that Wexford had a practice of not training its employees to recognize serious psychiatric needs or to properly respond to those needs. These failings, at this stage, were plausibly a proximate cause of Czubernat's death. *See, e.g.,* Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2010)(upholding jury verdict against county and others where evidence showed "widespread practice of failing to review inmates' timely filed medical requests . . . ."); Woodward v. Correctional Medical Services of Illinois, 368 F.3d 917, 927 (7th Cir. 2004)(upholding jury verdict against medical contractor for its actual practice of treating mentally ill inmates, because it was "so inadequate that CMS was on notice . . . that there was a substantial risk that [the inmate] would be deprived of necessary care in violation of his Eighth Amendment rights.").

In the Court's opinion, Plaintiff has given fair notice of a plausible constitutional claim against Wexford, which is all that is required.[3] It is hard to imagine what more Plaintiff could allege without the benefit of discovery.

---

[3]Wexford assails many of the other allegations against it, which involve other facilities and other time periods. The Court did not rely on these allegations in its conclusion. Whether these other instances are admissible to prove Plaintiff's claim is not before the Court.

Whether the claim will be proved is a question for summary judgment or trial.

WHEREFORE THE COURT RECOMMENDS THAT Plaintiff's motion to file an additional 2-622 report with the Second Amended Complaint be granted (d/e 112). THE COURT FURTHER RECOMMENDS THAT the motions to dismiss by Defendants Argosy Education Group, Inc., Ray, and Wexford Health Sources, Inc., be denied (d/e's 102, 104).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER: April 5, 2011

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE