# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JANET RENDON, *Independent* *Administrator of the Estate of* CAROL CZUBERNAT, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-cv-1410 |
| v. | ) ) | |
| WEXFORD HEALTH SOURCES, INC., ARGOSY EDUCATION GROUP, INC., AMY RAY, Ph.D., ANGELA WRIGHT, KIMERI SHULL, CYNTHIA PETERSON, PATRICK McELROY, HE YUAN, M.D., ARTHUR FUNK, M.D., and JOHN DOE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>O R D E R   &   O P I N I O N</u>

Before the Court are three motions to dismiss and one motion for leave to file, on which Magistrate Judge Cudmore has issued two Reports and Recommendations. These motions include: 1) Defendants Argosy Education Group, Inc., and Amy Ray, Ph.D.'s ("Defendants Argosy Group and Ray's") Motion to Dismiss Counts III, IV, and VII of Plaintiff's Second Amended Complaint (Doc. 102); 2) Defendant Wexford Health Sources, Inc.'s ("Defendant Wexford's") Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint (Doc. 104); 3) Plaintiff's Proposed Motion to File an Additional 2-622 Report with Second Amended Complaint at Law (Doc. 112); and 4) Defendant He Yuan, M.D.'s ("Defendant Yuan's") Motion to Dismiss Count X of Plaintiff's Second Amended Complaint (Doc. 128).

On April 5, 2011, Magistrate Judge Cudmore entered a Report and Recommendation (Doc. 131) recommending that Plaintiff's Motion to File be granted, and that both Defendants Argosy Group and Ray's Motion to Dismiss, and Defendant Wexford's Motion to Dismiss be denied. Both Defendant Wexford and Defendants Argosy and Ray timely filed Objections. (Docs. 133 & 134). On May 31, 2011, Magistrate Judge Cudmore entered his second Report and Recommendation (Doc. 136), recommending that Defendant Yuan's Motion to Dismiss be denied. Defendant Yuan has also timely filed an Objection (Doc. 137).

For the following reasons, Magistrate Judge Cudmore's R&R of April 5, 2011 (Doc. 131) is ADOPTED in part, and REJECTED in part. It is adopted to the extent that Plaintiff's Proposed Motion to File an Additional 2-622 Report with Second Amended Complaint at Law (Doc. 112) is GRANTED, Defendants Argosy Group and Ray's Motion to Dismiss Counts III and IV of Plaintiff's Second Amended Complaint (Doc. 102) is DENIED and Defendant Wexford's Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint (Doc. 104) is DENIED. It is rejected to the extent that Defendant Ray's Motion to Dismiss Count VII of Plaintiff's Second Amended Complaint is GRANTED, and Count VII of the Second Amended Complaint is DISMISSED. Further, Magistrate Judge Cudmore's R&R of May 31, 2011 (Doc. 136) is REJECTED, Defendant Yuan's Motion to Dismiss (Doc. 128) is GRANTED, and Defendant Yuan is DISMISSED from Count X of Plaintiff's Second Amended Complaint.

Plaintiff is the Independent Administrator of the Estate of Carol Czubernat. (Doc. 98 at 1). On August 1, 2008, Czubernat was arrested and charged with one count of aggravated driving under the influence of alcohol. (Doc. 98 ¶¶ 18-19). That same day, Czubernat was transferred to the DuPage County Jail, where she was denied admission pending an evaluation of her possible suicidal thoughts and prescription psychiatric medication. (Doc. 98 ¶ 20).[2] Czubernat was sent to Central DuPage Hospital for her evaluation, where she informed the medical personnel that she had told a guard at DuPage County Jail that she was suicidal. (Doc. 98 ¶ 23). After her evaluation, Czubernat was prescribed Cymbalta and Trazodone[3] and sent back to DuPage County Jail, where she was placed on medical watch from August 2 until August 5, 2008. (Doc. 98 ¶¶ 24-25).

On November 3, 2008, Czubernat pled guilty to aggravated driving under the influence, and was sentenced to three years imprisonment within the Illinois Department of Corrections. (Doc. 98 ¶ 26). On November 21, 2008, she was transferred to Dwight Correctional Center. (Doc. 98 ¶ 28). Czubernat was accompanied by a health information transfer form, which stated that she had been taking psychotropic medication over the past year, and that she had expressed suicidal behavior in August of 2008. (Doc. 98 ¶ 29). The form also stated that

---

[1] Pursuant to the applicable standard of review, the facts alleged in Plaintiff's Complaint are assumed to be true for the purpose of ruling on the instant motions to dismiss. *See In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (*citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

[2] Prior to her arrest, Plaintiff had been taking the medication Klonopin and Cymbalta. (Doc. 98 ¶ 22).

[3] Czubernat's prescription for Trazodone was discontinued on November 10, 2008. (Doc. 98 ¶ 27).

Czubernat was currently taking 60 milligrams of Cymbalta (Doc. 98 ¶ 29), which is an anti-depressant.

When she arrived at Dwight Correctional Center, Defendant Amy Ray performed a mental health evaluation of Czubernat. (Doc. 98 ¶ 30). During this evaluation, Czubernat told Ray that she had received prior treatment for mental health and emotional issues, such as depression and anxiety, over the past 18 years, including within the past year. (Doc. 98 ¶ 30). She told Ray that she had been diagnosed with depression and anxiety, and that some doctors had informed her that she may be bipolar. (Doc. 98 ¶ 31). In addition, she informed Ray that she was on medication and that she had previously attempted suicide when she was fourteen. (Doc. 98 ¶ 32). Ray did not question Czubernat about her suicidal behavior the previous August, but provided a provisional diagnosis of alcohol dependence, cannabis abuse, and depression. (Doc. 98 ¶¶ 33-34). Ray gave Czubernat a "routine placement," but referred her to drug TX school and work assignment and informed her that mental health services were available to her at any time. (Doc. 98 ¶ 35).

From November 21, 2008 until February 19, 2009, Czubernat did not receive any medication or mental health treatment from anyone at Dwight Correctional Center. (Doc. 98 ¶ 36). On February 12, 2009, Czubernat completed a medical referral request form to the health care unit requesting to see a psychiatrist; she wrote: "Please help me now! I cannot wait a month for an appointment! I need to see him immediately to be put back on my anti-depressant,

Trazadone. I am in a crisis. I can't handle it back here." (Doc. 98 ¶ 40).[4] On February 13, 2009, an unknown psychologist visited Czubernat's cell and told her that a psychiatrist would come visit her the following day, however he did not render her any treatment or prescribe her any medication. (Doc. 98 ¶ 42). On February 17, 2009, Czubernat completed another medical referral request form to the health care unit, in which she wrote: "**URGENT!!! EMERGENCY!! I need to see someone!** I am losing my mind and need medication. I am having constant panic attacks! . . . I am losing it in here and need to see a doctor . . . I do not want to go on suicide watch. I just want my meds!" (Doc. 98 ¶ 43 (emphasis in original)).

The health care unit received both of Czubernat's requests on February 18, 2009. (Doc. 98 ¶¶ 41, 44). That same day, Ray went to Czubernat's cell. (Doc. 98 ¶ 45). Although Czubernat informed Ray that she was anxious and having panic attacks, Ray informed her that she would not be moved up on the waiting list to see the psychiatrist. (Doc. 98 ¶ 45-46). On February 19, Ray recommended that she try relaxation techniques to manage her anxiety, and stated in her records that Czubernat denied suicidal and homicidal ideation and guaranteed her safety. (Doc. 98 ¶47). However, an unknown agent or employee of Defendant Wexford Health Sources also prescribed Cymbalta for Czubernat on the 19th, without first examining her. (Doc. 98 ¶ 48).

On February 20, 2009, Czubernat sent a letter to the health care unit addressed to Defendant He Yuan, in which she asked the doctor to come see her as soon as possible because she was experience panic attacks and depression and

---

[4] The health care unit received this request on February 18, 2009. (Doc. 98 ¶ 41).

needed to be "put back on my psych meds." (Doc. 98 ¶ 49). The letter was returned to Czubernat with the statement "Your meds were bridged on February 19, 2009. You will be scheduled with a doctor for a follow-up very soon." (Doc. 98 ¶ 50). Six days later, on February 25, 2009, Czubernat wrote another letter to Dr. Yuan stating that she still had not received her medication, and she wrote a follow-up letter to the health care unit the next day. (Doc. 98 ¶¶ 51-52). On February 26, 2009, the health care unit gave Cuzbernat her Cymbalta. (Doc. 98 ¶ 53).

The same day she received her Cymbalta, Czubernat wrote another follow-up letter to Dr. Yuan in which she stated that she had received her medication, but that she would need additional medication for anxiety and panic attacks. (Doc. 98 ¶ 54). She wrote Yuan that she was still experiencing panic attacks and heart palpitations and asked that he come to see her to discuss her situation. (Doc. 98 ¶ 54). She stated, in part: "I just found out I might have to stay here another two months. I won't make it! I am experiencing panic attacks EVERY DAY – SEVERAL TIMES A DAY PLEASE HELP ME." (Doc. 98 ¶ 54 (emphasis in original)). On February 27, 2009, she wrote another letter addressed to Dr. Yuan in which she again asked him to come see her to come see her. She stated that her situation was "very urgent" and "unbearable" and noted that the Cymbalta was not enough to help her. (Doc. 98 ¶ 55). On the morning of February 28, 2009, Czubernat was discovered to have committed suicide the night before. (Doc. 98 ¶ 72). None of the letters sent by Czubernat of February 25, 26, or 27th were processed; they were discovered in the mental health mailbox until March 2, 2009. (Doc. 98 ¶ 56).

I.      **Proceedings in the United States District Court for the Northern District of Illinois**

On March 10, 2010, Plaintiff filed her initial eleven-count Complaint in the United States District Court for the Northern District of Illinois, bringing constitutional and state law claims against various Defendants for damages arising out of Czubernat's suicide. (Doc. 1). Because several of her claims were based upon professional negligence, Plaintiff attached to her Complaint a Certification for an Action of Medical Malpractice Pursuant to 735 ILCS 5/2-622, in which a licensed physician specializing in psychiatry opined, to a reasonable degree of medical certainty, that a reasonable and meritorious basis existed for the filing of a cause of action against Wexford Health Sources, Inc., Amy Ray, Ph.D., and Arthur Funk, M.D. (Doc. 1-1). Plaintiff also attached an Attorney Affidavit pursuant to 735 ILCS 5/2-622 stating that he had consulted and reviewed the facts of the case with a health care professional whom he believed to be qualified and knowledgeable regarding the relevant issues, and that such professional had determined that there was a reasonable meritorious cause for filing this action. (Doc. 1-2).

On April 6, 2010, Defendant Wexford filed a Motion to Dismiss, seeking to dismiss one of Plaintiff's four claims against it. (Doc. 15).[5] In response, Plaintiff filed her First Amended Complaint. (Doc. 44). On April 26, 2010 Defendants Argosy Group and Ray filed a Motion to Dismiss arguing, in part, that the medical

---

[5] Defendant Wexford moved to dismiss Plaintiff's Monell claim against it, which was Count X of Plaintiff's original Complaint. Although Plaintiff added allegations to this count in its Amended and Second Amended Complaint, it is this same claim that Defendant Wexford has once again moved to dismiss in its instant Motion. (Doc. 104).

report Plaintiff had attached to her Complaint failed to comply with 735 ILCS 5/2-622, as it pertained to them, because the report was not authored by someone in the same profession and holding the same license as Defendant Ray, a clinical psychologist. (Doc. 39). Plaintiff filed a Response in which she argued that her medical report did meet all criteria, and, in the alternative, sought leave to file an additional report licensed by a psychologist, which she attached thereto. (Doc. 51 at 5, Exh. 3).

On May 24, 2010, Defendant Wexford filed a Motion to Dismiss Count VIII of Plaintiff's First Amended Complaint. (Doc. 56). On May 26, 2010, Defendants McElroy, Peterson, and Shull filed a Motion to Transfer Venue (Doc. 53). On July 15, Plaintiff filed a Motion for Leave to File a Second Amended Complaint, in order to add claims for individual liability against Defendants Ray, Funk, and John Doe pursuant to 42 U.S.C. § 1983. (Doc. 79). Accordingly, pending before the Northern District of Illinois were: 1) Defendants Argosy Group and Ray's Motion to Dismiss (Doc. 39); 2) Defendant Wexford's Motion to Dismiss (Doc. 56); 3) Plaintiff's Motion for Leave to File a Second Amended Complaint (Doc. 79); and 4) Defendants McElroy, Peterson, and Shull's Motion to Transfer Venue (Doc. 53). On December 10, 2010 United States District Judge Manning of the Northern District of Illinois granted Defendants' McElroy, Peterson, and Shull's Motion to Transfer Venue, and transferred the case to this Court. (Docs. 94 & 95). Judge Manning deferred ruling on any of the other pending motions.

## II.    Proceedings in this Court

This Court received this case from the Northern District on December 16, 2010.  (Doc. 97).  On December 28, 2010, Magistrate Judge Cudmore entered an Order granting Plaintiff's Motion to File a Second Amended Complaint, and denying all of Defendants' Motions to Dismiss without prejudice.  (Text Order of 12/28/2010).  Accordingly, Plaintiff's Second Amended Complaint came before this Court.  (Doc. 98).

Plaintiff's Second Amended Complaint seeks relief from ten defendants upon ten causes of actions.  As relevant to the motions currently pending before the Court, the Complaint alleges the following causes of action:  1) a claim for wrongful death/professional negligence against Defendants Argosy Education Group, Inc. and Amy Ray[6] (Count III); 2) a survival action for professional negligence against Defendants Argosy Group and Ray (Count IV); 3)  a claim against Defendant Ray in her individual capacity pursuant to 42 U.S.C. § 1983 (Count VII); 4) a Monell claim against Defendant Wexford Health Sources, Inc.[7] pursuant to 42 U.S.C.  §  1983

---

[6] Defendant Argosy Education Group, Inc. is a college university which had contracted with the State of Illinois and Dwight Correctional Center to provide a trained licensed clinical psychologist and other employees to Dwight Correctional Center for the screening, treating, and evaluating of its inmates.  Defendant Ray is a licensed clinical psychologist who was employed by Argosy Education Group and worked at Dwight Correctional Center within the scope of her employment.  (Doc. 98 ¶¶ 10-12).

[7] Defendant Wexford Health Source, Inc. is a corporation that had contracted to perform mental health care at Dwight Correctional Center.  (Doc. 98 ¶¶ 6-7). Defendant Yuan and Defendant Arthur Funk (who does not have a current motion pending before the Court) were employees of Defendant Wexford, and their work at Dwight Correctional Center was within the scope of such employment.  (Doc. 98 ¶¶ 8-9).

(Count VIII); and 5) a claim against Defendants He Yuan, Arthur Funk,[8] and John Doe in their individual capacities pursuant to 42 U.S.C. § 1983 (Count X).  Plaintiff attached her original two certifications to her Second Amended Complaint pursuant to 735 ILCS 7/2-622, however she did not attach the medical report of a licensed psychologist, which she had sought leave to file in response to Defendants Argosy Group and Ray's original motion to dismiss.

Accordingly, on January 18, 2011, Defendants Argosy Group and Ray filed their Motion to Dismiss Counts III, IV, and VII of Plaintiff's Second Amended Complaint (Doc. 102), in which they argue that: 1) Plaintiff's state law claims for professional negligence should be dismissed because Plaintiff failed to comply with 735 ILCS 5/2-622; and 2) Plaintiff's constitutional claim against Defendant Ray should be dismissed for failure to state a claim.  Plaintiff filed both a Response to Defendants Argosy Group and Ray's Motion to Dismiss (Doc. 126), and a Proposed Motion to File an Additional 2-622 Report with Second Amended Complaint at Law (Doc. 112), in which she seeks leave to file the medical report she previously presented to the Northern District.  Defendant Wexford also renewed its Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint on January 18 (Doc.104).

On April 5, 2011, after these three matters were fully briefed, Magistrate Judge Cudmore entered a Report and Recommendation, recommending that Plaintiff's Motion to File be granted, and both Defendants Argosy Group and Ray's, and Defendant Wexford's Motions to Dismiss be denied.  Both Defendants Argosy

_____

[8] Although Defendant Yuan has filed a Motion to Dismiss Count X of Plaintiff's Second Amended Complaint (Doc. 128), Defendant Funk has not done so.

Group and Ray and Defendant Wexford have filed Objections to Magistrate Judge Cudmore's April 5, 2011 R&R pursuant to Federal Rule of Civil Procedure 72(b)(2). (Docs. 133 & 134).

On March 14, 2011, Defendant Yuan (who was first named as a Defendant in Plaintiff's Second Amended Complaint), filed his Motion to Dismiss Count X of Plaintiff's Second Amended Complaint (Doc. 128), to which Plaintiff filed her Response on April 14, 2011 (Doc. 132). On May 31, 2011, Magistrate Judge Cudmore entered his second Report and Recommendation, recommending that Defendant Yuan's Motion to Dismiss be denied. (Doc. 136). Defendant Yuan filed an Objection to the May 31, 2011 R&R on June 14, 2011. (Doc. 137).

### DISCUSSION

"In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (*citing Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008)). To survive a motion to dismiss under 12(b)(6), a plaintiff's complaint must "plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007)). Though detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 547. "The complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (*quoting Twombly*, 550 U.S. at 557; *Tamayo*, 526 F.3d at 1084).

A district court reviews *de novo* any portion of a Magistrate Judge's R&R to which a "specific written objection has been made." FED. R. CIV. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

## I. Defendants Argosy and Ray's Motion to Dismiss Counts III, IV, and VII of Plaintiff's Second Amended Complaint

Plaintiff's Second Amended Complaint alleges three causes of actions against Defendants Argosy Group and Ray. In Counts III and IV, Plaintiff alleges state law claims of professional negligence against Defendants Argosy Group and Ray.[9] In Count VII, Plaintiff alleges an Eighth Amendment claim against Defendant Ray in her individual capacity, pursuant to 42 U.S.C. § 1983. Defendants Argosy Group and Ray have moved to dismiss all three of these claims. With regards to Counts III and IV, Defendants Argosy Group and Ray contend that Plaintiff has failed to comply with Illinois' procedural rules for bringing a claim of professional negligence; with regards to Count VII, they argue that Plaintiff has failed to adequately plead a cause of action against Defendant Ray.

### A. Counts III and IV

Under the Illinois Code of Civil Procedure, in a medical negligence case where a plaintiff seeks to recover damages from injuries sustained due to medical malpractice, the plaintiff must attach a report from a qualified health professional

---

[9] According to Defendants Argosy Group and Ray, Plaintiff's claims against Argosy Group are only based upon a theory of *respondeat superior* as Argosy Group was the employer or principal of Defendant Ray. (Doc. 102 at 5). In her Response (Doc. 126), Plaintiff does not argue that such assertion is inaccurate.

stating that the professional has reviewed the medical records and believes that the plaintiff has a reasonable and meritorious cause to file the action. 735 ILCS 5/2-622(a)(1);[10] *Hill v. C.R. Bard, Inc.*, 582 F.Supp.2d 1041, 1046 (C.D.Ill. 2008). The purpose of § 2-622 is to reduce the number of frivolous lawsuits that are filed and to eliminate such actions at an early stage before the expenses of litigation have mounted. *Garrison v. Choh*, 719 N.E.2d 237, 243 (Ill. App. Ct. 1999). As § 2-622 is a procedural hurdle, Illinois courts have liberally construed it so that "plaintiffs do not lose substantive rights because they have not strictly complied with the statute." *Hill*, 582 F.Supp.2d at 1046 (*citing Hobbs v. Lorenz*, 786 N.E.2d 260, 263 (Ill. App. Ct. 2003)). While never explicitly stated, there is clear language from the Seventh Circuit that § 2-622 applies to medical malpractice claims filed in federal court in Illinois. *Id.* (*citing Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000).

One of the requirements of § 2-622 is that the author of the qualified health professional report must be "licensed in the same profession, with the same class of license, as the defendant." § 2-622(a)(1). Here, Plaintiff attached a health professional report authored by a psychiatrist to her Second Amended Complaint (Doc. 98 Exh. 1); however Defendant Ray is a psychologist (Doc. 98 ¶ 12). Accordingly, Defendants Argosy Group and Ray argue that Plaintiff's § 2-622 report is inadequate and the professional negligence claims against her (and therefore Argosy Group) must be dismissed. (Doc. 102 at 5).

---

[10] The Court notes that according to the Illinois Supreme Court, due to several of that court's recent decisions concerning the constitutionality and effect of acts amending § 2-622, the section currently "reads as it did when amended in 1989 by Public Act 86-646." *Cookson v. Price*, 941 N.E.2d 162, 164 (Ill. 2010). Accordingly, the Court must look to that version of § 2-622 for purposes of determining the instant motions.

In response, Plaintiff does not argue that the current § 2-622 report is sufficient, but rather seeks leave to file an additional § 2-622 report ("Additional Report") with regards to Defendant Ray, which has been authored by a licensed psychologist. (Doc. 126 at 4-5; Doc. 112).[11] Plaintiff filed a motion to this effect (Doc. 112), which Magistrate Judge Cudmore recommended the Court grant (Doc. 131 at 9-12). Because Defendants Argosy Group and Ray have objected to the Magistrate's recommendation (Doc. 134), and the outcome of Defendant Argosy Group and Ray's Motion to Dismiss Counts III and IV hinges upon a determination of whether the Additional Report may be filed, the Court must address this issue prior to determining the merits of the motion to dismiss.

### B. Plaintiff's Motion to File an Additional 2-622 Report with Second Amended Complaint at Law

Defendants Argosy Group and Ray oppose Plaintiff's Motion to File for two reasons. First, they claim that the proposed Additional Report is facially defective pursuant to § 2-622 because 1) it is labeled as an "affidavit" rather than a "health-care professional report;" 2) it does not identify its author, nor is it signed by its author or notarized; and 3) it states that the affiant finds to a reasonable degree of *medical certainty* that a reasonable and meritorious basis exists for the filing of a cause of action against Defendant Ray, rather than to a reasonable degree of *psychological certainty*. (Doc. 120 at 1-2). Second, Defendants claim that the filing

---

[11] Plaintiff previously sought leave to file this Additional Report on May 19, 2010 (Doc. 51-3) in response to Defendants Argosy Group and Ray's Motion to Dismiss filed in the Northern District of Illinois (Doc. 39). However, as previously mentioned, the Northern District transferred the case to this Court prior to ruling on the motions (Doc. 95), and Plaintiff subsequently "inadvertently failed to attach" the Additional Report to her Second Amended Complaint. (Doc. 112 at 1).

of the Additional Report would prejudice them and has not been filed in a timely fashion. (Doc. 120 at 3-4).

Magistrate Judge Cudmore did not find the Defendants' objections to be convincing. With regards to the facial defects, the Magistrate found that 1) the fact that the Additional Report is labeled as an "affidavit" is irrelevant because it is clear that it is and is intended to be a "qualified health care profession report" pursuant to § 2-622; 2) Illinois law does not require the report to identify the author or be notarized; and 3) the fact that it states that the affiant believes there is a meritorious cause of action to a degree of *medical certainty* rather than *psychological certainty* is merely "nitpicking" and does not serve as an adequate basis to deny Plaintiff of her substantive rights. (Doc. 131 at 11-12).

This Court agrees with the Magistrate. With respect to Defendants Argosy Group and Ray's arguments concerning the label of the Additional Report and the precise language of the type of certainty upon which the expert determined there to be a meritorious basis for filing suit, the Court finds that such small errors do not justify depriving Plaintiff of her substantive rights. *See Cutler v. Northwest Suburban Community Hosp., Inc.*, 939 N.E.2d 1032, 1042 (Ill. App. Ct. 2010) ("Section 2-622 should not be mechanically applied to deprive a plaintiff of his substantive rights."); *Apa v. Rotman*, 680 N.E.2d 801, 804 (Ill. App. Ct. 1997) ("The technical requirements of the statute should not interfere with the purpose of the statute, and the absence of strict technical compliance is one of form only and not one of substance."). Further, with respect to Defendants' argument that the Additional Report is not signed or notarized, the Court finds that the currently

controlling version of § 2-622 does not require such signature. *See Cookson v. Price*, 941 N.E.2d 162, 164 (Ill. 2010).

In addition to their argument regarding the facial defects of the proposed Additional Report, Defendants Argosy Group and Ray also object to its admission because they claim that it is untimely and they will be prejudiced thereby. (Doc. 120 at 2-4). Again, Magistrate Judge Cudmore disagreed with Defendants. The Magistrate found that because Plaintiff had sought leave to file the Additional Report on May 19, 2010 (in response to Defendants' first motion to dismiss), they have been on notice of the existence of the Additional Report since that time, and accordingly would not be prejudiced. (Doc. 131 at 10-11). Moreover, the Magistrate found that Plaintiff was not seeking leave to file an original qualified health professional report, but rather to cure the deficiencies in her original one, and therefore there was no deadline by which she had to file. (Doc. 131 at 10).

The Court also agrees with this portion of the Magistrate's assessment. Section 2-622(a)(2) does require a plaintiff to file a qualified health care professional report within 90 days of the filing of a complaint, if one could not have previously been filed due to a pending statute of limitations, however that is not the situation here. In this case, Plaintiff filed a qualified health care professional report with her original and Second Amended Complaint, which attempted to provide the basis for a cause of action against Defendant Ray. (Doc. 98 Exh. 1). However, as Defendants Argosy Group and Ray pointed out in their Motion to Dismiss, such report was inadequate as to Defendant Ray because it was written by a psychiatrist rather than a psychologist. Accordingly, Plaintiff seeks to cure this deficiency by filing the

Additional Report.  Illinois courts have held that "amendments to pleadings are to be liberally allowed to enable medical malpractice actions to be decided on their merits rather than on procedural technicalities . . . . The goal is the furtherance of the ends of justice."  *Apa*, 680 N.E.2d at 804.  Moreover, as the Magistrate noted, Defendants were aware of this Additional Report since May of 2010, as Plaintiff sought leave to file it from the Northern District, (Doc. 51), and therefore should not be surprised or prejudiced by Plaintiff's request to file it now.  Therefore, the Court does not find Plaintiff's Motion to be untimely, nor does it find that Defendants Argosy Group and Ray will be prejudiced by the admission of the Additional Report.

For these reasons, the Court ADOPTS the Magistrate's R&R of April 5, 2011, with respect to Plaintiff's Motion to File (Doc. 112), and GRANTS the Motion. Accordingly, because Defendants Argosy Group and Ray's only argument with respect to dismissing Counts III and IV of the Second Amended Complaint is based upon the lack of such report, the Court also ADOPTS the Magistrate's R&R of April 5, 2011 with respect to the portion denying Defendants' Argosy Group and Ray's Motion to Dismiss those counts of the Second Amended Complaint.

## C. Count VII

In Count VII of her Second Amended Complaint, Plaintiff alleges an Eighth Amendment claim against Defendant Ray in her individual capacity pursuant to 42 U.S.C. § 1983.  (Doc. 98 at 25).  "A successful § 1983 claim based on a violation of the Eighth Amendment requires [Plaintiff] to prove two things:  1) that the harm to [Czubernat] was objectively, sufficiently serious and a substantial risk to [her] health or safety, and (2) that [Defendant Ray] was deliberately indifferent to

[Czubernat's] health and safety." *Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003).[12] To establish that Ray was deliberately indifferent to Czubernat's health and safety, Plaintiff must show both that Ray subjectively knew that Czubernat was at substantial risk of committing suicide, and that she intentionally disregarded that risk. *See id.* at 557.

Count VII of Plaintiff's Second Amended Complaint alleges that "the conduct of . . . Amy Ray . . . on November 21, 2008 and February 18, 2009, was intentional and carried out with willful and deliberate indifference to the health and welfare of . . . Czubernat." (Doc. 98 ¶ 100). Plaintiff seeks to support the November 21, 2008 allegation with the following facts: 1) on November 21, 2008 Czubernat was transferred to the Dwight Correctional Center, along with a health information transfer form stating that she had been taking psychotropic medication over the past year and that she expressed suicidal behavior in August 2008 (Doc. 98 ¶¶ 28-29); 2) on that date, Defendant Ray performed a mental health evaluation of Czubernat in which Czubernat informed her that she had received prior mental health treatment for mental and emotional health issues over the past 18 years, including within the past year; that she had been diagnosed with depression, anxiety, and potentially bi-polar disorder; that she was currently taking psychotropic drugs for these issues; that she had other family members who had been hospitalized for mental and emotional health issues; and that she had previously attempted suicide (Doc. 98 ¶¶ 30-32); 3) Defendant Ray failed to ask Czubernat about her suicidal behavior in August of 2008, and provided her a

---

[12] The first prong is not at issue here as because suicide is an objectively serious harm as a matter of law. *See Matos*, 335 F.3d at 556.

provisional diagnosis of alcohol dependence, cannabis abuse, and depressive disorder (Doc. 98 ¶¶ 33-34); and 4) Czubernat did not receive any type of medication or mental health treatment from Defendant Ray or any other doctor from November 21, 2008 until February 19, 2009, despite several letters requesting to see a doctor and receive medication (Doc. 98 ¶¶ 36-37, 40, & 43).[13]

With respect to the February 19, 2009 allegation of deliberate indifference, Plaintiff provides the following factual background: 1) On February 18, 2009 Defendant Ray went to Czubernat's cell, and Czubernat informed her that she was "anxious, does not enjoy living in segregation, and his having panic attacks" and that she met with a mental health counselor the previous Friday who told her she would have her medications by Saturday (Doc. 98 ¶ 45); 2) Defendant Ray informed Czubernat that she would not be moved upon the waiting list to see a psychiatrist (Doc. 98 ¶ 46); 3) on February 19, 2009, Defendant Ray recommended that Czubernat try relaxation techniques to manage her anxiety, to which Czubernat responded "You suck" and walked away from her cell door (Doc. 98 ¶ 47); and 4) Defendant Ray stated in her records that Czubernat denied suicidal and homicidal ideation and guaranteed her safety (Doc. 98 ¶ 47).[14]

---

[13] As it relates to Plaintiff's Eighth Amendment claim against Ray, the Court finds it relevant that Plaintiff also pleads that: 1) on November 21, 2008, Ray informed Czubernat that mental health services were available to her at any time (Doc. 98 ¶ 35); and 2) Czubernat's only alleged requests to be seen by a mental health professional were received on February 18, 2009, and Ray went to visit her that same day (Doc. 98 ¶¶ 41, 44, & 45).

[14] Again, the Court also finds it relevant that Plaintiff has pled that in her February 17, 2009 letter to the health care unit, Czubernat stated "I do no want to go on suicide watch. I just want my meds!" (Doc. 98 ¶ 43).

Defendant Ray contends that Plaintiff fails to sufficiently allege that she intentionally disregarded the risk posed to Czubernat. (Doc. 102 at 6-8). According to Ray, Plaintiff's allegations "might give rise to a disagreement with the manner in which Dr. Ray allegedly treated Czubernat, but simply disagreeing with the manner of treatment does not give rise to an Eighth Amendment claim pursuant to 42 U.S.C. § 1983." (Doc. 102 at 8). Magistrate Judge Cudmore disagreed with Defendant Ray, and found that Plaintiff stated a plausible claim that she "failed to act despite her knowledge that if Carol Czubernat's mental health issues were not treated, there was a substantial risk that she would harm herself," which in turn allowed for the reasonable inference that Ray was deliberately indifferent. (Doc. 131 at 14)

The Court does not agree with the Magistrate's assessment because it finds that Plaintiff has failed to adequately plead that Defendant Ray had subjective knowledge that Czubernat was at risk of committing suicide. While Plaintiff does allege that Czubernat informed Ray of a history of suicidal behavior, she does not allege any facts which would support a plausible inference that Ray was subjectively aware that Czubernat was suicidal at the time she was incarcerated at Dwight. According to Plaintiff's allegations, after evaluating Czubernat, Ray informed her that mental health services were available at any time, (Doc. 98 ¶ 35) and visited Czubernat the first day that the health care unit received her requests for assistance. (Doc. 98 ¶¶ 41, 44 & 45). Notably, in Plaintiff's request for assistance, she stated that she did not want to go on suicide watch, and Ray wrote in her notes after meeting with Czubernat that she denied suicidal ideations and

guaranteed her own safety. (Doc. 98 ¶¶ 43 & 47). Based upon these allegations, the Court does not find it plausible that Ray was subjectively aware that Czubernat was at risk to harm herself, as Czubernat expressly told her to the contrary. Because there is no plausible inference that Ray was aware of a substantial risk to Czubernat's safety, there can also be no inference that Ray was deliberately indifferent to such risk. *See Matos*, 335 F.3d at 556.

Therefore, the Court REJECTS the portion of Magistrate Judge Cudmore's April 5, 2011 R&R denying Defendant Ray's Motion to Dismiss Count VII and GRANTS Defendant Ray's Motion to Dismiss Count VII of Plaintiff's Second Amended Complaint.

## II. Defendant Wexford's Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint

In Count VIII of her Second Amended Complaint, Plaintiff alleges a *Monell* claim against Defendant Wexford pursuant to 42 U.S.C. § 1983. (Doc. 98 at 26).[15] Defendant Wexford is a private corporation which was allegedly contracted to provide medical, mental health and dental care to inmates at Dwight Correctional Center, and employed Defendant Drs. Yuan and Funk. (Doc. 98 ¶¶ 6-9). A private corporation acting under the color of state law is treated as a municipal entity for purposes of § 1983. *Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002). As such, Defendant Wexford can not be liable upon a theory of *respondeat superior*. *Monell v. Dep't of Social Svcs. of City of New York*, 436 U.S.

---

[15] Plaintiff brought this claim in her original Complaint under Count X (Doc. 1), however after Defendant Wexford filed its first Motion to Dismiss (Doc. 15), Plaintiff amended her complaint to allege additional facts against Wexford and moved the claim to Count VIII.

658, 691 (1978). However, Defendant Wexford may be liable under § 1983 if an official policy or custom of the corporation resulted in the alleged constitutional deprivation. *Monell*, 436 U.S. at 690-91; *Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010). Accordingly, to state a viable § 1983 claim against Defendant Wexford, Plaintiff must allege that her injury was caused by: 1) an express policy; 2) a widespread practice constituting a 'custom or usage'; or 3) the act of a person with final policymaking authority at Wexford. *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008).

Here, Plaintiff alleges that Defendant Wexford "had a custom and practice of failing to process medical requests, failure to train employees to treat inmates, and failure to properly staff jails and prisons throughout the United States and at the Dwight Correctional facility." (Doc. 98 ¶ 110). To support this allegation, Plaintiff pleads facts regarding problems Defendant Wexford has encountered at other prison facilities in Illinois, New Mexico, Washington, and Pennsylvania over the past decade. (Doc. 98 ¶¶ 104-109). Plaintiff also alleges facts directly concerning the Dwight Correctional Center. She alleges that on January 26, 2010, a commission from the John Howard Association visited the Dwight Correctional Center and determined that it had significant problems with medical intake, concluding that "inmates in the reception and classification center are waiting for weeks or months to see a psychiatrist and are deprived of needed psychotropic medications during that time." (Doc. 98 ¶ 103). The group determined that the long delays in psychiatric treatment were unacceptable and posed a threat to the health and safety of inmates. (Doc. 98 ¶ 103). Plaintiff also alleges that the warden of

Dwight and other senior officials acknowledged "troublesome delays in providing psychiatric treatment and psychotropic medication." (Doc. 98 ¶ 103).

Defendant Wexford argues that the facts pled by Plaintiff do not support her allegation that a custom or practice of Wexford caused a constitutional deprivation because the conclusions of the John Howard Association and Dwight officials were made eleven months after Czubernat committed suicide. (Doc. 104 at 5). In addition, Wexford maintains that even if such a policy was properly pled, Plaintiff has failed to plead that such policy or custom was the "moving force" behind Plaintiff's injury. (Doc. 104 at 7). Magistrate Judge Cudmore disagreed, and found that Plaintiff's allegations were sufficient to raise a plausible inference that "Wexford, with deliberate indifference, had no policy in place to ensure that requests for serious and urgent psychiatric needs were timely processed," that Wexford "had a practice of not training its employees to recognize serious psychiatric needs or to properly respond to those needs," and that these failings "were plausibly the proximate cause of Czubernat's death." (Doc. 131 at 16-17).[16]

This Court agrees with Magistrate Judge Cudmore's conclusion that a plausible claim has been stated. Plaintiff has alleged a widespread custom or policy of Defendant Wexford. Moreover, Plaintiff has supported her allegation with enough facts to allow a plausible inference that her claim may have merit. Although the facts regarding the findings of the John Howard Association and

---

[16] Magistrate Judge Cudmore did not rely on the allegations concerning the findings of the John Howard Association and Dwight officials in 2010. (Doc. 131 at 17 n.3). While the Court agrees with Magistrate Judge Cudmore's conclusion that a plausible claim has been stated, it believes that these allegations are necessary to support Plaintiff's claim.

Dwight officials arose after the date of Czubernat's suicide, it is plausible that the problems discovered at that time also existed eleven months prior, especially in light of Plaintiff's allegations regarding the events preceding Czubernat's death. In addition, the allegation that these policies (or lack thereof) were the cause of Czubernat's death is supported by the allegations concerning her lack of psychiatric treatment and attention.[17] Therefore, the Court ADOPTS the portion of Magistrate Judge Cudmore's April 5, 2011 R&R denying Defendant Wexford's Motion to Dismiss and DENIES Defendant Wexford's Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint.

## III. Defendant Yuan's Motion to Dismiss Count X of Plaintiff's Second Amended Complaint

In Count X of her Second Amended Complaint, Plaintiff alleges an Eighth Amendment claim against Defendants He Yuan, Arthur Funk and John Doe pursuant to 42 U.S.C. § 1983.[18] (Doc. 98 at 32). Only Defendant Yuan has filed a motion to dismiss this Count.

---

[17] Plaintiff has alleged that the Warden of Dwight Correctional Center and other ranking prison officials acknowledged that there "were troublesome delays in providing psychiatric treatment and psychotropic medication" to inmates. (Doc. 98 ¶ 103). Defendant Wexford's alleged custom or lack of policy for the timely processing of requests could plausibly have led to such delays, which resulted in inadequate treatment for Czubernat. Czubernat wrote at least three letters to the health care unit on the days prior to her suicide requesting assistance, and these letters were not processed until several days after she had already taken her own life. (Doc. 98 ¶ 56).

[18] As an initial matter, the Court notes that it does not look favorably upon the inclusion of three separate defendants in the same count of a complaint, as it is not clear what facts Plaintiff is alleging with respect to each named defendant. Despite the fact that the Court is dismissing Defendant Yuan from this Count on grounds independent of this issue, when Plaintiff re-files her Complaint, she is directed to separate out the claims against Defendant Doe and Defendant Funk.

"A successful § 1983 claim based on a violation of the Eighth Amendment requires [Plaintiff] to prove two things: 1) that the harm to [Czubernat] was objectively, sufficiently serious and a substantial risk to [her] health or safety, and (2) that [Defendant Yuan] was deliberately indifferent to [Czubernat's] health and safety." *Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003).[19] To establish that Yuan was deliberately indifferent to Czubernat's health and safety, Plaintiff must show both that Yuan subjectively knew that Czubernat was at substantial risk of committing suicide, and that he intentionally disregarded that risk. *See id.* at 557. Finally, as with any cause of action under § 1983, Plaintiff must allege that Defendant was "personally responsible" for the constitutional violation in that he knew about the misconduct and participated in it, directed it, approved it, facilitated it, or knowingly turned a blind eye to it. *Knight v. Wiseman*, 590 F.3d 458, 462 (7th Cir. 2009).

Defendant Yuan argues that Plaintiff has failed to allege either prong of the deliberate indifference standard because she cannot allege that Yuan knew Czubernat, and accordingly cannot allege that Yuan was aware of any risk to her, or that he consciously disregarded such a risk. (Doc. 129 at 6). Additionally, Yuan argues that Plaintiff has failed to allege that he was personally responsible for any constitutional deprivation because Plaintiff is unable to plead that Yuan was involved in Czubernat's care, or even knew of her existence. (Doc. 129 at 7).

Magistrate Judge Cudmore disagreed, finding that Plaintiff had adequately alleged a plausible claim of deliberate indifference and personal responsibility

---

[19] The first prong is not at issue here as because suicide is an objectively serious harm as a matter of law. *See Matos*, 335 F.3d at 556.

against Defendant Yuan. (Doc. 136 at 7). In reaching this determination, Judge Cudmore relied upon the allegations that Defendant Yuan was a psychiatrist working at Dwight Correctional Center and that Czubernat had addressed urgent letters to him. (Doc. 136 at 7). Based upon these allegations, Judge Cudmore found that there was a plausible inference that Yuan either saw or was otherwise informed of the content of the letters, and that he was responsible for Czubernat's psychiatric care. (Doc. 136 at 7).

This Court does not agree with Magistrate Judge Cudmore's assessment of this claim. While Plaintiff does allege that letters were addressed to Dr. Yuan, and that Dr. Yuan was a psychiatrist at the Dwight Correctional Center, such allegations do not plausibly support the necessary finding that Yuan was actually aware of the risk to Czubernat.[20] Plaintiff fails to allege that Yuan ever had any contact with Czubernat, or that he actually read/received her letters. In fact, Plaintiff has pled that Yuan never received three of the letters she sent to him, as they were not even discovered until several days after she had committed suicide. (Doc. 98 ¶ 56). Because Plaintiff has not provided any factual support for the proposition that Yuan was actually aware of the risk to Czubernat, she cannot maintain an Eighth Amendment deliberate indifference claim against him.

Accordingly, Magistrate Judge Cudmore's May 31, 2011 R&R (Doc. 136) is REJECTED, Defendant Yuan's Motion to Dismiss Count X of Plaintiff's Second

---

[20] Plaintiff's allegation that Defendant Yuan "knew that Carol Czubernat was in need of mental health treatment and was at high risk to harm herself" is merely a conclusory recital of the elements of the cause of action, and is therefore not entitled to a presumption of truth.

Amended Complaint (Doc. 128) is GRANTED, and Count X of Plaintiff's Second Amended Complaint is DISMISSED.

CONCLUSION

For the foregoing reasons, Magistrate Judge Cudmore's R&R of April 5, 2011 (Doc. 131) is ADOPTED in part, and REJECTED in part. Plaintiff's Proposed Motion to File an Additional 2-622 Report with Second Amended Complaint at Law (Doc. 112) is GRANTED, Defendant Wexford's Motion to Dismiss Count VIII of Plaintiff's Second Amended Complaint (Doc. 104) is DENIED, Defendants Argosy Group and Ray's Motion to Dismiss Counts III and IV of Plaintiff's Second Amended Complaint (Doc. 102) is DENIED and Defendant Ray's Motion to Dismiss Count VII of Plaintiff's Second Amended Complaint (Doc. 102) is GRANTED, and Count VII of Plaintiff's Second Amended Complaint is DISMISSED. Further, Magistrate Judge Cudmore's R&R of May 31, 2011 (Doc. 136) is REJECTED, Defendant Yuan's Motion to Dismiss (Doc. 128) is GRANTED, and Defendant Yuan is DISMISSED from Count X of Plaintiff's Second Amended Complaint. This matter is REFERRED BACK to Magistrate Judge Cudmore for further pre-trial proceedings consistent with this Order and Opinion. IT IS SO ORDERED.

Entered this <u>6th</u> day of July, 2011.

s/ Joe B. McDade<br>JOE BILLY McDADE<br>United States Senior District Judge